IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARSCO CORPORATION,** | : |
| **Plaintiff** | : Civ. No. 13-cv-2726 |
| v. | : |
| **NOVETAS SOLUTIONS, LLC,** | : |
| **Defendant** | : Judge Sylvia H. Rambo |

### M E M O R A N D U M

Presently before the court is Plaintiff's motion for a preliminary injunction seeking to enforce a settlement agreement that resolved prior litigation between the parties. For the reasons that follow, the motion will be denied.

**I.** **Background**

    **A.** **Procedural Background**

Harsco initiated the captioned action by filing a complaint on November 6, 2013 (Doc. 1) and an amended complaint on December 20, 2013 (Doc. 12). On January 10, 2014, Novetas filed an answer to the amended complaint asserting affirmative defenses and a counterclaim. (Doc. 17.) On March 19, 2014, Harsco filed a motion for a preliminary injunction. (Doc. 23.) Novetas filed a brief in opposition to the motion on April 2, 2014 (Doc. 25), and Harsco filed a brief in support of the motion on April 22, 2014 (Doc. 26). A hearing on the motion was held on April 23, 2014. Thus, the motion is ripe for disposition.

    **B.** **Factual Background**

As the court writes primarily for the parties, who are familiar with the facts and procedural history of the case, it will set forth only those facts necessary to its analysis.

Harsco avers that it is the world's largest manufacturer of high quality, inert blasting abrasives used for blast cleaning and preparation of surfaces, including coal slag blasting abrasives.  (Doc. 26, p. 2.)  Harsco sells its blasting abrasives under the federally registered trademark BLACK BEAUTY®.  (*Id.*)  Novetas manufactures and sells glass abrasives used for blast cleaning and preparation of surfaces, and is a competitor of Harsco.  (*Id.*)  Novetas commercially advertises and markets its recycled glass blasting abrasives under the trademark NEW AGE BLAST MEDIA®, using printed publications, periodic email blasts, and the websites www.newageblastmedia.com and www.novetas.net (the "advertising materials").  (*Id.*)

On December 20, 2013, Harsco filed an amended complaint (Doc. 12) alleging that Novetas had breached the terms of a confidential settlement agreement, which had served to resolve prior litigation between the parties that had been pending before this court under Civil Case No. 1:11-cv-1355 ("the prior litigation"). In the prior litigation, Harsco alleged that Novetas had embarked on a pervasive advertising campaign to disparage Harsco Minerals and its BLACK BEAUTY® product.  (Doc. 26, p. 3.)  More specifically, Harsco alleged that Novetas made false and misleading claims regarding the composition and safety of Harsco's product, the opinions of the Environmental Protection Agency ("EPA"), and the EPA's past, current, and future endorsement of and regulations relating to coal slag.  (*Id.*) Harsco further alleged that Novetas' acts were causing and would continue to cause damage and irreparable harm to Harsco's reputation and goodwill.  (*Id.* at p. 4.)

The July 8, 2012 Settlement Agreement ("Settlement Agreement") contains six continuing limitations on Novetas's future statements and conduct

regarding Harsco and coal slag abrasives.  (*Id*.)  In addition, the agreement contains limitations on Harsco's future statements with regard to Novetas.  (*Id*.)  In consideration of these reciprocal promises, the parties agreed to mutual general releases of liability and the case was dismissed.  (*Id*.)

In the present action, Harsco claims that Novetas has continued to make false, misleading, and disparaging claims regarding the composition and safety of Harsco's products, which it contends is in violation of the Settlement Agreement.  (Doc. 23, ¶ 18; Doc. 26, p. 5.)  In support of its allegation, Harsco asserts at least four alleged breaches of the Settlement Agreement.[1]

First, Harsco claims that Novetas violated the settlement agreement on November 13, 2013 when it issued "Beryllium Alert Report #4" by email blast and by posting the article on its website.  (*Id*. at p. 9.)  The article was a complete reprint of a newspaper article originally published in the Norfolk, Virginia Daily Press and contained explicit references to Harsco and its BLACK BEAUTY® product.  (Doc. 25, p. 5; *see* Hearing Exhibit No. 1 ("Ex. No. __").)  Harsco argues that Novetas's distribution of the article violated Provision 2.1 of the Settlement Agreement, which prohibits Novetas from making any "explicit or implicit reference to Harsco or its corporate affiliates in any Media whatsoever," and defines "Media" as, *inter alia*, direct mail, websites, Internet blogs, and email blasts.  (Settlement Agreement at ¶ 2.1; Doc. 26, p. 9.)  Harsco adds that the sole exception to this prohibition, which does not apply here, is where Novetas directly quotes a "government public health

---

[1] In its motion for a preliminary injunction (*see* Doc. 23) and at the hearing on its motion, Harsco noted several additional alleged breaches of the Settlement Agreement.  However, in its brief in support of its motion, Harsco asserts only four specific breaches.  (*See* Doc. 26.)  For purposes of this motion and in the interest of brevity, the court will only summarize the four alleged breaches provided in Harsco's brief.

agency" and the quoted statement references Harsco. (Doc. 26, p. 9; *see* Settlement Agreement at ¶¶ 2.1 and 2.4.) In response, Novetas contends that its distribution of the article did not in any way violate the Settlement Agreement because, *inter alia*, "[n]othing in the settlement agreement precludes Novetas from reprinting entire articles which mention Harsco." (Doc. 25 at pp. 5-6.)

The second alleged breach of the Settlement Agreement relates to a comment posted to an industry website, www.paintsquare.com, by Paul Mellon Jr., the President of Novetas, in response to an article appearing on the website. (Doc. 26, p. 9; *See* Ex. No. 3.) In the post, Mr. Mellon wrote:

> *I think it is now apparent to the EPA that they will not be able to continue to allow coal slag abrasives in their new Beneficial Program* regardless of the EPA's final decision on CCR's as Hazardous or special waste. OSHA's decision to tell the coal slag companies in 2012 to list the highly toxic metal beryllium and other toxins on their MSDS ends any pretense that the EPA used in the past to claim coal slag abrasives are "safe" for human health or [the] environment. It is clear from OSHA that there are toxins in the slag dust at unsafe levels. This will become even more obvious to the EPA and Industry *when OSHA issues their new lower exposure limit for beryllium due in December*.

(Ex. No. 3. (emphasis supplied).) Harsco argues that this posting violated Provision 2.5 of the Settlement Agreement, which prohibits Novetas from "misrepresent[ing] any report, opinion or statement made by the EPA, OSHA, NIOSH or any other government agency or mak[ing] any unsubstantiated prediction as to future government activity regarding coal slag abrasives." At the preliminary injunction hearing, Mr. Mellon testified that the EPA has not yet issued any decision regarding the use of coal slag abrasives nor has the EPA issued a new lower exposure limit for beryllium. Harsco therefore asserts that these statements constituted unsubstantiated

predictions in violation of the Settlement Agreement.  (*See* Doc. 26, pp. 9-10.) Novetas strongly disagrees, arguing that the Settlement Agreement does not prohibit Novetas employees from posting comments on non-Novetas websites about coal slag abrasives, without any reference to Harsco or its products.  (Doc. 25, pp. 6-7.)

The third alleged breach noted by Harsco involves an October 25, 2013 posting on a Novetas website wherein Novetas provided commentary about an article published in *The Daily Press*, stating: "This article should be the start of an effort to force the Navy and shipyards to offer testing to workers to see if any are beryllium sensitive." (Ex. No. 4.)  Harsco claims that this statement violated Provision 2.5 of the Settlement Agreement in that it was an unsubstantiated prediction because the Navy "has not offered such testing to workers nor are there any substantiated sources supporting that such testing will commence at any point." (Doc. 26, p. 10.)  At the hearing, Mr. Mellon testified that he is not aware if the Navy has begun any such testing, but asserted that the statement was an opinion rather than a prediction.

Finally, Harsco claims that Novetas again violated Provision 2.5 of the Settlement Agreement when Mr. Mellon, in a comment posted on the Paint Square website on February 12, 2013, wrote: "[C]oal slag abrasives and other unencapsulated uses of coal waste still await a decision by the EPA.  Stay tuned." (Ex. No. 7.)  Harsco argues that, "[c]ontrary to [Mr.] Mellon's implication, there is no substantiation for his contention that the EPA is studying or in the midst of making any regulatory decision regarding the use of coal slag abrasives.  His comment is pure speculation." (Doc. 26, p. 11.)  In opposition, Novetas reasserts that nothing in the Settlement Agreement precludes Novetas employees from

posting comments on non-Novetas websites about coal slag abrasives without any reference to Harsco or its products. (Doc. 25, p. 11.)

Harsco argues that these four occurrences, in addition to others, constitute clear and repeated violations of the Settlement Agreement, and, therefore, Harsco has a strong likelihood of prevailing on the merits of its substantive claim for breach of contract. (Doc. 26, p. 11.) In addition, Harsco claims that it will be irreparably harmed if a preliminary injunction is not issued because Novetas's breaches of the Settlement Agreement can transform Novetas' competitive position for the better and unfairly place Harsco at a disadvantage and because the harm resulting from the breaches, while significant, is incapable of calculation. (*Id*. at p. 13.)

In response, Novetas contends that Harsco has failed to demonstrate a reasonable probability of success on the merits of its breach of contract claim because Harsco has not and cannot prove any damages resulting from Novetas's alleged breaches. (Doc. 25, pp. 12-13.) Novetas argues that Harsco has instead only offered speculative harm in the form of lost customers and incalculable damages and that such speculation fails to rise to the level necessary to establish irreparable harm for purposes of obtaining a preliminary injunction. (*Id*. at p. 14.)

## **II.**      **Legal Standard**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by *a clear showing*, carries the burden of persuasion." *Figueroa v. Precision Surgical, Inc.*, 423 F. App'x 205, 208 (3d Cir. 2011) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A court may grant an injunction only if the movant shows: "(1) a

substantial likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Ace American Ins. Co. v. Wachovia Ins. Agency, Inc.*, 306 F. App'x 727, 730 (3d Cir. 2009) (citing *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). While all four elements are essential, the Third Circuit has held that "a failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *In Re Arthur Teacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000).

### III.     Discussion

Upon consideration of the evidence produced by Harsco in its motion and at the hearing, the court concludes that Harsco has failed to meet its burden of establishing irreparable harm.

Harsco alleges that Novetas' actions are causing Harsco irreparable harm because, *inter alia*, Harsco's losses of goodwill, control of reputation, and current and future business are not susceptible to calculation for monetary relief. In this regard, Harsco argues that Novetas's conduct "can instantly transform Novetas's competitive position and unfairly place Harsco at a significant disadvantage," that "Harsco will never be able to prove the extent of influence that each of these breaches has on Novetas's business or its ability to take work from Harsco," and that "the harm, while huge, is simply incapable of calculation." (Doc. 26, p. 13.) The court is not persuaded.

In the context of a preliminary injunction, irreparable harm has been defined by the Third Circuit as "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Figueroa*, 423 F. App'x at 210 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). As the Third Circuit has explained:

> The key word in this inquiry is *irreparable*. Mere injuries, however substantial, in terms of money, time[,] and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (emphasis in original) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Thus, in order to justify the issuance of a preliminary injunction, the injury must "be of a peculiar nature, so that compensation in money cannot atone for it." *Figueroa*, 423 F. App'x at 210. (quoting *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976)). Indeed, "the preliminary injunction must be the only way of protecting the [movant] from harm." *Instant Air Freight*, 882 F.2d at 801. "No less than a 'clear showing of immediate irreparable injury'" will do. *Acierno*, 423 F. App'x at 210 (quoting *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976)).

Here, the losses that Harsco alleges are, at this point, merely speculative. At the hearing, when asked to discuss the harm Harsco had sustained as a result of Novetas's conduct, Dominic DeAngelo, the Vice President of Sales and Marketing for Harsco Minerals, testified that Harsco's customers have expressed concerns relating to the safety of Harsco's product stemming from communications the customers had received from Novetas. Mr. DeAngelo explained that, as a result

of these concerns, his sales team is devoting a significant amount of time and resources to defending Harsco's product rather than to selling it.  However, Mr. DeAngelo also testified that his team dealt with concerns related to the safety of their product prior to any of Novetas's advertisements.  Moreover, and significant to Harsco's motion, Mr. DeAngelo did not testify that Harsco has lost any customers as a result of Novetas's alleged breaches of the Settlement Agreement nor did he bring forth any sales figures showing a decline in sales.  Indeed, viewing the record as a whole, Harsco has not identified any contracts that were broken, any third parties with whom it suffered a loss of reputation or goodwill, or any other evidence of damages.  A plaintiff in a breach of contract case cannot obtain a preliminary injunction simply by speculating that the breach possibly harmed or will harm its reputation, goodwill, or customer base.  Rather, a plaintiff must show immediate irreparable injury.  *Acierno*, 423 F. App'x at 210.

        Moreover, Harsco has not demonstrated that the coal slag abrasive industry is different from other types of commerce in such a way that normal breach of contract remedies could not provide adequate compensation.  The losses that Harsco alleges are not of such a "peculiar nature" that compensation in money damages would not suffice, and Harsco has not explained why damages resulting from any loss of existing customers or increased costs to serve its customers are not capable of ascertainment.  Instead, Harsco has simply stated that its damages "are difficult or impossible to calculate because the full ramifications of the breaches are not known" (Doc. 23, ¶ 35) and that it is incurring "indefinable financial losses in the form of lost profits and loss of customers" (*id*. at ¶ 41).  However, difficulty in assessing the value of such losses or in predicting future lost profits is not

tantamount to irreparableness. As the Third Circuit explained in *Acierno*, "[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable." 40 F.3d at 655. The uncertainty of the extent of monetary damages, if any, does not warrant imposing extraordinary relief.

Accordingly, based on the record before the court, Harsco has failed to provide sufficient evidence of irreparable harm for purposes of preliminary injunctive relief, and, therefore, the court will deny Harsco's motion for a preliminary injunction. *Ace American Ins. Co. v. Wachovia Ins. Agency, Inc.*, 306 F. App'x 727, 732 (3d Cir. 2009) (finding that failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction).

## IV.  Conclusion

Harsco has failed to persuade the court that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief. Under Third Circuit precedent, absent a demonstration of irreparable harm, a preliminary injunction may not be issued. Thus, the court need not reach the remaining three factors in the four-factor analysis, and the motion for a preliminary injunction will be denied.

An appropriate order will issue.

S/SYLVIA H. RAMBO<br>
United States District Judge

Dated: May 16, 2014.